IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **PATRICIA ALEASIA SMITH-BRIM,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. PJM 14-683** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## REPORT AND RECOMMENDATION

Patricia Aleasia Smith-Brim ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Judgment on the Pleadings and alternative motion for remand (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 17).[1] Plaintiff maintains that the ALJ failed to weigh properly her credibility and the medical evidence concerning her mental impairment. Defendant contends that the administrative record contains substantial evidence to support the Commissioner's decision that Plaintiff is not disabled. Under Standing Order 2014-01, this matter has been referred to the undersigned for pretrial management and for proposed findings of fact and

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

recommendations under 28 U.S.C. § 636(b)(1)(B) and L.R. 301(5)(b)(ix).   No hearing is necessary.  L.R. 105(6).  For the reasons that follow, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 17) be **GRANTED** and Plaintiff's Motion for Judgment on the Pleadings and alternative motion for remand (ECF No. 10) be **DENIED**.

**I**

**Background**

Plaintiff was born in 1967, has a high-school education, and previously worked as a dental radiologist/assistant and substitute teacher.  R. at 46, 125, 151, 156.  Plaintiff applied protectively for SSI on July 23, 2009, alleging disability beginning on May 1, 2006 (later amended to July 23, 2009), due to bipolar disorder, cervical cancer, and back problems.  R. at 19, 125-30, 144-45, 150.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 68-81, 84-86.  On February 10, 2012, ALJ G.B. Arthur held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 30-67.  On April 24, 2012, the ALJ issued a decision finding Plaintiff not disabled since the amended application date of July 23, 2009.  R. at 16-29. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on July 17, 2013.  R. at 5-10, 15.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On March 7, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  On July 21, 2014, Plaintiff filed her Motion for Judgment on the Pleadings and alternative motion for remand.  ECF No. 10.  On November 20, 2014, Defendant filed her Motion for Summary Judgment.  ECF No. 17.  On June 22, 2015, the case was referred

to the undersigned for a report and recommendation for the disposition of the parties' motions. The matter is now fully submitted.

**II**

**<u>Summary of Evidence</u>**

The relevant period in this case is from Plaintiff's amended application date of July 23, 2009, to the date of the ALJ's decision on April 24, 2012. Thus, Plaintiff's medical history during this period relevant to her mental impairment at issue is discussed here and in Part VI below.

**A.      Opinion Evidence**

**1.      State Agency Consultants**

On July 21, 2010, Maurice Prout, Ph.D., a state agency consultant, evaluated on a psychiatric review technique form ("PRTF") Plaintiff's bipolar disorder under paragraph B of Listing 12.04 related to affective disorders. R. at 373-83. Dr. Prout opined that Plaintiff's mental impairment caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 375-76, 381. Dr. Prout did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.04. R. at 382. Dr. Prout thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 384-86) and opined that she was moderately limited in her ability to (1) carry out detailed instructions; (2) work in coordination with or proximity to others without being distracted by them; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; and to (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes.

Plaintiff otherwise was not significantly limited.  R. at 384-85.  Dr. Prout's RFC assessment thus provided that "[Plaintiff] is capable of understanding and following simple instructions. [Plaintiff] is capable of adequately interacting [with] others provided it is in a non-crowded environment.  Given the above, there are no limitations in adaptation."  R. at 386.

On March 15, 2011, another state agency consultant, P. Sokas, M.D., also evaluated on a PRTF Plaintiff's mental impairment under paragraph B of Listing 12.04.  R. 484-97.  Dr. Sokas opined that Plaintiff's bipolar disorder not otherwise specified caused her to experience (1) moderate restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration.  R. at 487, 494.  Dr. Sokas also did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.04 (R. at 495), so Dr. Sokas also assessed Plaintiff's mental RFC (R. at 498-501) and opined that she was moderately limited in her ability to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) respond appropriately to changes in the work setting; and to (5) set realistic goals or make plans independently of others.  Plaintiff otherwise was not significantly limited.  R. at 498-99.  Dr. Sokas's mental RFC assessment provided:

> 48 year old woman with bipolar disorder.  She also has multiple physical complaints, which have been evaluated separately.
>
> Intelligence scores at time of initial evaluation showed some variability, with average Verbal Comprehension and Perceptual Reasoning but declines in Working Memory and Processing Speed.

In 3/3/2011 [consultative examination], [Plaintiff] reported limitations, but actual presentation in the interview indicated euthymic mood, with no evidence of distress.

Treating source notes indicate she is generally described as at least "fairly" stable and there have been no significant medication changes in recent years.

The [medical evidence of record] indicates that [Plaintiff's] condition may impose partial or intermittent limitations of sustained concentration, reliability, task persistence and adaptation.

Treating source, S. Johnson, MD (11/18/2010) and evaluating source R. Johnson, PhD (3/3/2011) provide conclusory opinions about [Plaintiff's] ability to work.  This decision is reserved to the Commissioner.  These opinions do not appear consistent with evidence in file.

[Plaintiff] retains the ability to learn and carry out routine tasks.

R. at 500.

## 2.    Spencer Johnson, M.D.

Dr. Johnson, a psychiatrist, began treating Plaintiff in early 2007.  R. at 509, 517, 519. On March 22, 2010, Plaintiff's symptoms were fairly controlled, and her treatment was continued.  R. at 352.  On May 5, 2010, Dr. Johnson noted no changes.  R. at 352.  On June 19, 2010, Plaintiff's symptoms were under adequate control, so Dr. Johnson did not change her medications.  R. at 351, 507.  On September 28, 2010, Plaintiff's symptoms again were under adequate control, so Dr. Johnson continued her treatment.  R. at 351, 507.  On October 19, 2010, Plaintiff's symptoms were under acceptable control, so no changes were made to her medications.  R. at 350.  On November 18, 2010, Dr. Johnson noted that Plaintiff remained stable and in fair control, but he opined that she was "unable to work due to ongoing mood instability in the short term."  R. at 350.  On March 22, 2011, Dr. Johnson noted that Plaintiff was stable.  R. at 508.  On May 2, June 7, and July 12, 2011, Dr. Johnson noted that Plaintiff's

symptoms were either fairly or adequately controlled.  R. at 508.  On July 12, 2011, Dr. Johnson referred Plaintiff to a psychotherapist upon her request.  R. at 508.

On October 27, 2011, Dr. Johnson completed a Psychiatric/Psychological Impairment Questionnaire.  R. at 509-16.  His diagnoses included mixed bipolar disorder with psychotic features and borderline personality disorder.  R. at 509.  Plaintiff's GAF score was 45.[2]  Dr. Johnson's prognosis stated the following: "[Plaintiff] has had several recurrent episodes of severe major depression.  She has been very difficult to treat [and] has had complicated social stressors.  [Plaintiff] has demonstrated that she cannot sustain gainful employment in the foreseeable future."  R. at 509.  Clinical findings that supported his diagnosis included sleep disturbance, mood disturbance, emotional lability, psychomotor agitation or retardation, difficulty thinking or concentrating, illogical thinking or loosening of associations, decreased energy, and manic syndrome.  R. at 510.  Plaintiff's primary symptoms included unstable mood, depression, and sleep disturbance.  R. at 511.

Dr. Johnson also opined that Plaintiff was markedly limited (effectively precluded) in her ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (4) work in coordination with or proximity to others

---

[2]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) [hereinafter *DSM-IV-TR*].  A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

without being distracted by them; (5) complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) ask simple questions or request assistance; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (10) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to (11) respond appropriately to changes in the work setting.  R. at 512-13.

Dr. Johnson further opined that Plaintiff was moderately limited (significantly limited but not totally precluded) in her ability to (1) understand, remember, and carry out simple, one- or two-step instructions; (2) understand and remember detailed instructions; (3) sustain ordinary routine without supervision; (4) make simple work-related decisions; (5) be aware of normal hazards and take appropriate precautions; and to (6) set realistic goals or make plans independently.  R. at 511-14.  Dr. Johnson found that Plaintiff experienced episodes of deterioration or decompensation in work or work-like setting that caused her to withdraw from that situation and/or to experience exacerbation of signs and symptoms.  R. at 514.  Dr. Johnson also opined that Plaintiff was not a malingerer but that her psychiatric condition did not exacerbate her pain or any other physical symptom.  R. at 515.  According to Dr. Johnson, Plaintiff was incapable of tolerating even low stress at work, and she would have "good days" and "bad days" because of her impairments that would cause her likely to be absent from work more than three times per month.  R. at 515-16.

On November 8, 2011, Dr. Johnson noted that Plaintiff was "[n]egativistic and labile" and had "[u]nreasonable expectations regarding housing and employment."  R. at 518.  On

December 6, 2011, Plaintiff's symptoms were under fair control, but she continued to be unable

to function independently of family support.  R. at 518.  On January 3, 2012, Dr. Johnson noted

that Plaintiff

> has been difficult to treat due to increased sensitivity to mood stabilizers and
> antipsychotic medications which have been further complicated by work and
> family related stressors.  She has had episodes of mania and depression
> complicated by delusional ideations.  [Plaintiff] has demonstrated that she cannot
> maintain stability for an extended period of time and has not been able to manage
> basic activities of daily living without the support of others.  Her overall
> prognosis is guarded and I am of the professional opinion that she cannot sustain
> gainful employment now or in the foreseeable future.

R. at 518.

On January 5, 2012, Dr. Johnson noted that Plaintiff's symptoms were stable.  R. at 525,

527.  On February 2, 2012, Plaintiff's symptoms were under good control, and she had started

seeing a therapist for cognitive behavioral therapy.  R. at 525, 527.  Dr. Johnson's responses to a

Psychiatric/Psychological Impairment Questionnaire on February 21, 2012, indicated findings

similar to his findings on his October 2011 questionnaire.  R. at 519-24.

The ALJ noted the following in his decision:

> [Plaintiff] began treating with Spencer Johnson, MD for medication
> management in 2007.  Treatment notes from Dr. Johnson consistently reported
> stable symptoms with medication.
>
> . . . .
>
> In May 2011, treating psychiatrist, Spencer Johnson, MD discontinued
> Lithium because [Plaintiff] developed akisthesia (or motor restlessness), and
> added Abilify.  The doctor noted more symptoms but fair control of those
> symptoms.
>
> In October 2011, Dr. Johnson assessed [Plaintiff's] psychiatric
> impairments for the purposes of her disability claim.  Dr. Johnson noted that he
> [had] first treated [Plaintiff] in 2007.  Dr. Johnson noted diagnoses of bipolar
> disorder and borderline personality disorder.  The doctor noted sleep problems,
> mood disturbance, mental lability, psychomotor retardation, decreased energy,
> and manic syndrome.  The doctor opined that [Plaintiff] would have moderate

limitations to understanding and memory as well as marked limitations to sustained concentration and social interactions. Dr. Johnson concluded that [Plaintiff] would be unable to sustain employment.

Dr. Johnson reiterated his conclusion that [Plaintiff] would be unable to work in January and February 2012 and [sic]. Dr. Johnson noted problems with increased sensitivity to mood stabilizers and antipsychotic medications.

R. at 25 (citations omitted).

### 3.    Dellena Cunningham, Ph.D.

Dr. Cunningham, a licensed clinical psychologist, conducted a consultative examination

of Plaintiff on May 13, 2010. R. at 359-66. The ALJ noted in his decision:

In May 2010, [Plaintiff] underwent consultative psychological examination with Dellena Cunningham, PhD at the behest of Disability Determination Services. Dr. Cunningham administered several psychological tests. The doctor noted that [Plaintiff's] gait was slow and unsteady but that she was able to sit for the entire evaluation without complaints of physical pain. [Plaintiff] reported that she had a breakdown in 2006 and that she gets medication management twice monthly. She reported a newer diagnosis of bipolar disorder. She reported suicidal ideation with no plan. She described basic activities of daily living and good supportive friends. WAIS-IV testing placed [Plaintiff] in the low average range. Working memory and processing speed were in the borderline range. Dr. Cunningham diagnosed [Plaintiff] with moderate major depressive disorder and estimated [Plaintiff's] GAF score at 55, indicating moderate symptoms.

R. at 25 (citation omitted).[3]

### 4.    Raynell Johnson, Ph.D.

Dr. Johnson, a licensed psychologist, conducted a consultative mental status evaluation of

Plaintiff on March 3, 2011. R. at 477-83. The ALJ noted in his decision:

In March 2011, [Plaintiff] underwent further consultative psychological examination with Rayness [sic] Johnson, PhD. Dr. Johnson described [Plaintiff] as friendly, approachable and cooperative. [Plaintiff's] mood was euthymic and

---

[3] A GAF rating between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *DSM-IV-TR*, *supra* note 2, at 34.

affect was appropriate. Insight and judgment were good. [Plaintiff] reported mood swings. She also reported problems with concentration and memory. Dr. Johnson estimated [Plaintiff's] GAF score at 65, indicating mild symptoms.

R. at 25 (citation omitted).[4]

### 5. Darius Driskell, M.A., LCPC

Mr. Driskell, a professional counselor, treated Plaintiff on January 17, 2012, and February 14, 2012. R. at 581-86. The ALJ noted in his decision:

In 2012, [Plaintiff] began cognitive behavioral therapy treatment with Darius Driskell, MD [sic]. She reported irritable mood, down affect and difficulty concentrating. [Plaintiff] explained that her current depression stemmed from housing issues. [Plaintiff] noted that she was looking for work. [Plaintiff] reported a suicide attempt in 2010. Of note, [Plaintiff] was no longer taking a mood stabilizer. Dr. Driskell estimated [Plaintiff's] GAF score at 60, indicating moderate symptoms. The doctor diagnosed [Plaintiff] with major depressive disorder in full remission and bipolar disorder.

R. at 25-26 (citations omitted).

### B. Hearing Testimony

### 1. Plaintiff's Testimony

The ALJ reviewed Plaintiff's testimony in his decision:

At the hearing, [Plaintiff] alleged that she is unable to sustain work in any capacity due to limitations imposed by back pain, headaches, and bipolar disorder. She has chronic aching pain in her lower back radiating to her legs. She also has pain in her neck.

When [Plaintiff] is in a manic state, she says she finds it difficult to concentrate. She only sleeps two to three hours in this state. When she is depressed, she feels down and cries often. She says she has also had suicidal thoughts.

---

[4] A GAF rating between 61 and 70 indicates that the individual has "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) [or] some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but [is] generally functioning pretty well [and] has some meaningful interpersonal relationships." *DSM-IV-TR*, *supra* note 2, at 34.

[Plaintiff] testified that she underwent back surgery in the summer of 2011.  She also gets headaches for which she goes to the emergency room every two to three months.  She takes several medications for pain and depression.  The medications are helpful but cause fatigue.  She has problems paying attention and remembering.  However, she watches news programs and reads.  She uses a computer for social networking and email[] and research as to her condition.

[Plaintiff] testified that she can prepare simple meals and do light housekeeping.  She is able to shop and to visit with friends on a limited basis.  [Plaintiff] testified that she can lift and carry five pounds, stand for five minutes, sit for ten minutes, and walk for one block.  She is able to drive short distances and take public transportation; do laundry; keeps room clean; listens to music; goes out every few days; has difficulty with stress and changes.

R. at 23-24; *see* R. at 41-66.

The ALJ also noted that, "[i]n her Function Report, [Plaintiff] noted shopping in the grocery store.  She noted crocheting, reading, and spending time with family.  She noted spending time on the internet. . . . Although she alleged that she is unable to work, the record shows that she has recently been looking for work."  R. at 26 (citations omitted); *see* R. at 200-07, 582.

## 2.      VE Testimony

Among the ALJ's questions posed to the VE was one asking the VE to consider a hypothetical individual with certain physical limitations and whose mental limitations "preclude[d] the attention and concentration required for skilled work" but were "not at a level of severity that preclude[d] the attention and concentration required for unskilled or semiskilled work involving using common sense while following instructions."  R. at 35.  The ALJ asked the VE to consider such an individual also needing "unskilled, routine type of work with no more than occasional contact with the general public."  R. at 36.[5]  The ALJ asked the VE to consider

---

[5] The ALJ defined "occasional" as "very little to little, up to at the highest point within the occasional level, one-third of an eight-hour day."  R. at 34.

such an individual also with "occasional interference" in performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; completing a normal workday or workweek without an unreasonable length and number of rest periods; accepting instructions and responding appropriately to criticism from supervisors; and in interacting and getting along with co-workers and peers.  R. at 37.  The VE testified that this individual could perform the light, unskilled jobs of packer and packaging worker, inspector, or bench worker and also the sedentary, unskilled jobs of finish machine operator, quality-control worker, or security worker.[6]  R. at 39-40.  Such an individual also could perform these jobs if that individual had "occasional interference" in the ability to work in coordination with or in proximity to others without distracting them or being distracted by them.  R. at 37, 40.

## III

## Summary of ALJ's Decision

On April 24, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended application date of July 23, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy.  R. at 21-28.  The ALJ thus found that she was not disabled since the amended application date of July 23, 2009.  R. at 29.

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  *Id.* § 416.967(a).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  *Id.* § 416.968(a).

In so finding, the ALJ found that Plaintiff had the RFC

> to perform light work [and sedentary work] as defined in 20 CFR 416.967(b) except she could not climb ladders, ropes or scaffolds or be exposed to hazardous moving machinery or temperature extremes.  [Plaintiff] could only occasionally climb stairs and ramps, balance, [stoop], crouch or kneel.  She could not crawl. She would be precluded from work requiring the use of push/pull controls with her legs and could not lift or carry above shoulder level.  [Plaintiff] would retain the ability to walk or stand for a total of four hours and sit for a total of six hours in an average eight-hour workday.  She would have to avoid concentrated exposure to excessive vibration and avoid excessive dust, fumes, chemicals, humidity or wetness.  [Plaintiff] would require unskilled routine work with no more than occasional contact with the public.  She would be able to maintain a schedule and regular attendance with only occasional interferences and without unreasonable length and number of rest periods and could accept instructions and respond appropriately to criticism from supervisors more than 80% of the time. [Plaintiff] experiences occasional pain and fatigue, but could still function satisfactorily 80% of the time.  [Plaintiff] would require the option to sit or stand with no more than a 1/2 hour sitting or standing at any one time period.

R. at 22-23.

The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 26.  The ALJ found that, because of

> the inconsistency between [Plaintiff's] activities and her allegations regarding the functional limitations of her impairment as well as some general inconsistent statements regarding matters relevant to the issue of disability, the undersigned does not find [Plaintiff's] testimony regarding the degree of limitation imposed by her impairments to be fully credible and consequently gives [Plaintiff's] testimony limited weight.

R. at 26.

The ALJ further considered the medical opinions in this case:

> State agency psychological consultant, P. Sokas, MD found that [Plaintiff] would have moderate limitations to activities of daily living and concentration.

The undersigned affords this opinion great weight, as it is based on a review of the record and is consistent with the objective findings.

The undersigned affords the conclusion of Dr. Stephen [sic] Johnson that [Plaintiff] is unable to work, little weight. First, a treating source's opinion that a claimant is disabled does not direct a finding of disability under the rules and regulations of the Social Security Act, as this is a decision which is reserved to the Commissioner; however, the opinion must be considered and a finding made regarding the extent to which it is supported by the record. More importantly, Dr. Johnson's opinion is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. Further, the doctor's opinion is inconsistent with his treatment notes which generally report stable findings.

R. at 27 (citations omitted).

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at

379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[7]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

---

[7] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**V**

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erred in evaluating Dr. Spencer Johnson's opinions and failed to evaluate the doctor's opinions under 20 C.F.R. § 416.927(c) relating to the weighing of medical opinions.  Plaintiff further maintains that the ALJ erred in evaluating her credibility.  As discussed below, it is recommended that the Court grant Defendant's Motion for Summary Judgment (ECF No. 17), deny Plaintiff's Motion for Judgment on the Pleadings and alternative motion for remand (ECF No. 10), and affirm the Commissioner's final decision.

### A.      Weight Given by ALJ to Opinion Evidence

Plaintiff maintains that the ALJ erred in affording little weight to Dr. Spencer Johnson's opinions because they were conclusory, inconsistent with his treatment notes, and related to an issue reserved to the Commissioner.  R. at 27.  Defendant contends that Plaintiff fails to show that Dr. Johnson's opinions were entitled to greater weight than the ALJ accorded.

The Fourth Circuit in *Dunn v. Colvin*, __ F. App'x __, No. 14-1565, 2015 WL 3451568, at *3 (4th Cir. June 1, 2015), recently reiterated the following standard for considering medical opinions.   When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. § 416.927.  "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn*, 2015 WL 3451568, at *3 (quoting *Scivally v. Sullivan*, 966 F.2d 1070,

1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. § 416.927(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2). Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) ("[A] treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c))). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 416.927(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* § 416.927(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* § 416.927(c)(4); *see also Dunn*, 2015 WL 3451568, at *3.

In light of the foregoing, the ALJ properly afforded little weight to Dr. Spencer Johnson's opinions that Plaintiff was "unable to work" (R. at 350) and could not "sustain gainful employment now or in the foreseeable future" (R. at 518). The ALJ nonetheless noted that his "opinion must be considered and a finding made regarding the extent to which it is supported by the record." R. at 27. In doing so, the ALJ found that Dr. Johnson's opinions were conclusory and inconsistent with his treatment notes. R. at 27. As noted above, Dr. Johnson noted during Plaintiff's treatment that her medications stabilized or adequately or fairly controlled her symptoms. R. at 350-52, 507-08, 518, 525, 527. Dr. Johnson's own treatment notes thus provide persuasive contradictory evidence. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (finding that evidence of effective control of claimant's symptoms by her medications detracted from treating physician's opinion that claimant was unable to work); *Craig*, 76 F.3d at 590; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

Dr. Johnson also opined that Plaintiff "cannot sustain gainful employment in the foreseeable future" because "[s]he has been very difficult to treat [and] has had complicated social stressors." R. at 509. According to Dr. Johnson, Plaintiff "cannot manage stressful situations," and "symptoms are exacerbated by stress." R. at 514. As noted previously, Dr. Johnson's treatment notes belie the doctor's characterization of Plaintiff's symptoms in his responses to the Psychiatric/Psychological Impairment Questionnaire in October 2011. Thus, contrary to Plaintiff's assertion, substantial evidence supports the ALJ's finding that "Dr. Johnson's opinion is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion" (R. at 27). *See Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (Posner, C.J.) (upholding ALJ's rejection of physician's check-box form where it was

contradicted by evidence in record); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding

that ALJ permissibly rejected psychological evaluations because they were check-off reports that

did not contain any explanation of the bases of their conclusions).   Furthermore, although

Plaintiff points out that an ALJ must consider the factors cited in *Johnson* and in 20 C.F.R.

§ 416.927(c) when not affording a treating source's opinion controlling weight, in this case,

"[w]hile the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ

was clear that he concluded that the doctor's opinion was not consistent with the record or

supported by the medical evidence, which are appropriate reasons under *Johnson*." *Bishop*, 583

F. App'x at 67.

Plaintiff further asserts that the ALJ erroneously relied on the opinion from Dr. Sokas, the

non-examining state agency consultant, who did not review Dr. Johnson's questionnaires.   "[A]

non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a

denial of disability benefits when it is contradicted by *all of the other evidence* in the record."

*Smith*, 795 F.2d at 345 (quoting *Martin v. Sec'y of Dep't of Health, Educ. & Welfare*, 492 F.2d

905, 908 (4th Cir. 1974)).   However, "the testimony of a non-examining physician can be relied

upon when it is consistent with the record." *Id.* at 346.   "Furthermore, if the medical expert

testimony from examining or treating physicians goes both ways, a determination coming down

on the side of the non-examining, non-treating physician should stand." *Id.*

As noted in Part V above, the duty to resolve conflicts in the evidence rests with the ALJ,

not with the Court. *Johnson*, 434 F.3d at 653; *Smith*, 99 F.3d at 638; *see Seacrist v. Weinberger*,

538 F.2d 1054, 1056-57 (4th Cir. 1976) ("[I]t is the responsibility of the [Commissioner] and not

the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who

bears the risk of nonpersuasion." (footnote omitted)).   In this case, while Dr. Sokas "did not have

the benefit of a full record, the ALJ did," *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015) (per curiam), and found that "the record of evidence establishes that [Plaintiff] has substantially greater functional capabilities" than she alleged (R. at 26).  Furthermore, Dr. Sokas's opinion "included notes with references to specific evidence from the record that supported the consultant's findings," *id.*, including Dr. Cunningham's consultative examination on May 13, 2010; Dr. Raynell Johnson's mental status evaluation on March 3, 2011, including Plaintiff's GAF rating of 65; and Plaintiff's function report on January 10, 2011.  R. at 496, 500. Plaintiff's contention regarding the ALJ's consideration of Dr. Sokas's opinion thus is unavailing.

Plaintiff further contends that the ALJ erred in assigning weight to the opinions of Drs. Cunningham and Raynell Johnson.   The burden is on the party attacking an agency's determination to show that prejudice resulted from the error, however.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009).   "Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."  *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011).   "[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'"  *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964)). Furthermore, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand

might lead to a different result.").  Rather, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time."  *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bishop*, 583 F. App'x at 67.

Here, the ALJ gave "great weight" to the opinion of Dr. Sokas, who reviewed the reports of the examinations by Drs. Cunningham and Raynell Johnson.  R. at 27, 496.  The ALJ's failure to weigh explicitly the opinions of Drs. Cunningham and Raynell Johnson, even if erroneous, thus was harmless.  *See Bryant v. Colvin*, 571 F. App'x 186, 190 (4th Cir.) (per curiam) (finding harmless error in ALJ's failure to discuss consultative examiner's report because report was discussed by state agency consultants, whose opinions were given "great weight" by ALJ, and was consistent with medical evidence on record), *cert. denied*, 135 S. Ct. 727 (2014); *Morgan v. Barnhart*, 142 F. App'x 716, 722-23 (4th Cir. 2005).  In short, substantial evidence supports the ALJ's consideration of the opinions in this case, including the opinions of Dr. Spencer Johnson.

**B.     ALJ's Determination of Plaintiff's Credibility**

Plaintiff next contends that the ALJ failed to evaluate properly her credibility.  She maintains that, in determining her credibility, the ALJ erroneously considered her activities of daily living, her GAF scores indicating mild to moderate symptoms, and her search for work. According to Plaintiff, substantial evidence thus does not support the ALJ's credibility determination.  Defendant maintains, however, that the ALJ cited evidence and reasons to support his evaluation of Plaintiff's subjective complaints.

The Fourth Circuit in *Dunn* also reiterated the following standard in evaluating a claimant's complaints of pain or other symptoms.  *Dunn*, 2015 WL 3451568, at *8-9.

"[W]hether a person is disabled by pain or other symptoms is a two-step process."  *Craig*, 76

F.3d at 594.  First, there must be objective medical evidence showing "the existence of a medical

impairment(s) which results from anatomical, physiological, or psychological abnormalities and

which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R.

§ 416.929(b).  "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is

instead on establishing a determinable underlying impairment—a statutory requirement for

entitlement to benefits—which could reasonably be expected to be the cause of the disabling

pain asserted by the claimant."  *Craig*, 76 F.3d at 594 (citation omitted).  Second, after the first

inquiry is complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain,

and the extent to which it affects her ability to work."  *Id.* at 595; *see* 20 C.F.R. § 416.929(c)(1).

"[T]his evaluation must take into account not only the claimant's statements about her pain, but

also 'all the available evidence,' including the claimant's medical history, medical signs, and

laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint

motion, muscle spasms, deteriorating tissues, redness, etc.) . . . ."  *Craig*, 76 F.3d at 595 (citation

omitted); *see* 20 C.F.R. § 416.929(c)(1)-(2).  The ALJ must also take into account "any other

evidence relevant to the severity of the impairment, such as evidence of the claimant's daily

activities, specific descriptions of the pain, and any medical treatment taken to alleviate it."

*Craig*, 76 F.3d at 595; *see* 20 C.F.R. § 416.929(c)(3); *see* Social Security Ruling[8] ("SSR") 96-7p,

1996 WL 374186, at *3 (July 2, 1996).

---

[8]  Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

> Yet while "a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers."

*Stitely v. Colvin*, __ F. App'x __, No. 14-2302, 2015 WL 4621292, at *2 (4th Cir. Aug. 4, 2015)

(per curiam) (alteration in original) (quoting *Craig*, 76 F.3d at 595).

> [T]here must be . . . a medical impairment . . . which, when considered with all evidence . . . (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

Thus, in light of the foregoing, an ALJ may rely upon evidence of a claimant's daily activities to evaluate subjective complaints of pain, as "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994); *see* 20 C.F.R. § 416.929(c)(3)(i). Here, as noted above, the ALJ found that Plaintiff's reported activities involving crocheting, reading, spending time with family, watching television news programs, and using a computer for social networking and email. Substantial evidence thus supports the ALJ's finding that Plaintiff's activities belied her allegations regarding the functional limitations of her impairment (R. at 26). *See Johnson*, 434 F.3d at 658 ("The ALJ also found [the claimant's] complaints of pain to be inconsistent with her testimony of her routine activities. [The claimant] testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor. [The claimant] also testified that she can lift approximately ten pounds. The ALJ logically reasoned that the ability to engage in such

activities is inconsistent with [the claimant's] statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention."); *Gross*, 785 F.2d at 1166 (upholding finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day); SSR 96-7p, 1996 WL 374186, at *5 (ALJ must consider factors such as consistency of claimant's statements with other information in record, including consistency of claimant's own statements).

Plaintiff further asserts that the ALJ erred by finding that her allegations are inconsistent with GAF scores in the record that have "consistently been estimated in the mild to moderate range" (R. at 26). "While . . . the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' the GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010) (citation omitted). However, "GAF scores, even when reliable and from acceptable medical sources, do not govern an ALJ's analysis." *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *3 (D. Md. Apr. 26, 2013). "The difficulty with assigning significant weight to GAF scores is the fact that those scores can be lowered by factors other than the pure severity of a claimant's mental impairments." *McGougan v. Comm'r, Soc. Sec.*, Civil Case No. JKB-13-52, 2014 WL 266807, at *2 n.3 (D. Md. Jan. 23, 2014). Thus, "while nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record, it is well established that GAF scores are not determinative of disability." *Campbell v. Comm'r, Soc. Sec.*, Civil Case No. 14-1331-GLR, 2015 WL 275746, at *4 (D. Md. Jan. 21, 2015).

Here, while Plaintiff correctly points out that GAF scores are not determinative of disability, the ALJ appropriately considered Plaintiff's GAF scores, which ranged from 45 to as high as 65, in assessing her level of functioning.  "Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude [Plaintiff] from having the mental capacity to hold at least some jobs in the national economy."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).  *But see Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. . . . A GAF rating of 50 does not represent functioning within normal limits.  Nor does it support a conclusion that [the claimant] was mentally capable of sustaining work.").  Plaintiff's contention that the ALJ erred in considering her GAF scores thus is unavailing.

Finally, contrary to Plaintiff's assertion, the ALJ appropriately considered Plaintiff's search for work when discounting her credibility (R. at 26, 582).  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (among specific findings supporting ALJ's adverse credibility determination was fact that claimant had sought employment); *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (actively searching for work during the claim period may support discounting individual's claims of disability); *Hamm v. Astrue*, Civil Action No. TMD 07-395, 2009 WL 3806785, at *4 (D. Md. Nov. 12, 2009).  In short, substantial evidence supports the determination of Plaintiff's credibility by the ALJ, who in this case applied the correct legal standards.

## C.     Issues Related to *Mascio v. Colvin*

The undersigned notes that the ALJ's finding in his decision that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment" (R. at 26) "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Posner, J.)).  Rather, the ALJ should compare the claimant's alleged functional limitations from pain to the other evidence in the record, not to the claimant's RFC.  *See id.*  "[A] claimant's pain and residual functional capacity are not separate assessments to be compared with each other.  Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity." *Id.*  In this case, however, the ALJ's use of the problematic boilerplate language does not require remand because the ALJ "properly analyzed [Plaintiff's] credibility elsewhere" and explained "how he decided which of [Plaintiff's] statements to believe and which to discredit" (R. at 26). *Id.* at 639, 640; *see, e.g.*, *Sevens v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1900, 2015 WL 2402821, at *2 (D. Md. May 19, 2015).

The undersigned further notes that, in finding that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04 found in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 (R. at 21-22), the ALJ found that, "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.  She noted that she is able to crochet and to read.  [Plaintiff] testified that she is able to use a computer.  She is able to drive short distances" (R. at 22).  The ALJ's hypothetical questions to the VE included mental limitations regarding "occasional interference" in a number of mental activities, including "accepting instructions and responding appropriately to criticism from supervisors and interacting and getting along with coworkers and peers" and "working in coordination with or proximity to others without distracting them or

being distracted by them." R. at 37. The ALJ also asked the VE to consider a hypothetical individual with the attention and concentration required for unskilled or semi-skilled work involving the use of common sense while following instructions. R. at 35. In his decision, the ALJ's assessment of Plaintiff's RFC included a finding that she "would require unskilled routine work with no more than occasional contact with the public." R. at 23. The ALJ's RFC assessment also included a finding that Plaintiff "would be able to maintain a schedule and regular attendance with only occasional interferences and without unreasonable length and number of rest periods." R. at 23. Because of Plaintiff's moderate limitations in maintaining concentration, persistence, or pace, the ALJ found that she was limited to unskilled, routine work. R. at 26.

The Fourth Circuit has held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.*

The ALJ in this case found that Plaintiff was limited to unskilled work because of her moderate limitations in concentration, persistence, or pace (R. at 26), but the ALJ also included in his RFC assessment and hypothetical questions to the VE a corresponding limitation that Plaintiff would be able to maintain a schedule and regular attendance with only occasional interferences and without an unreasonable length and number of rest periods (R. at 23, 37). *See*

*Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) ("Pursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary.").   Thus, rather than merely finding that Plaintiff's moderate difficulties in concentration, persistence, or pace limited her to unskilled, routine work (R. at 26), the ALJ in his RFC assessment and hypothetical questions to the VE also accounted for Plaintiff's ability to maintain a schedule and regular attendance with only occasional interference and without an unreasonable length and number of rest periods (R. at 23, 37-39), which relates to her ability to stay on task.  Even though the ALJ erred in limiting Plaintiff to unskilled, routine work because of her moderate difficulties in maintaining concentration, persistence, or pace, the error was harmless because the ALJ's RFC assessment and the VE's testimony accounted for Plaintiff's ability to stay on task.  *See Geisler v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (finding that ALJ harmlessly erred in basing step-three determination on claimant's difficulties in performing complex tasks because, *inter alia*, ALJ's RFC assessment accounted for limitations in concentration, persistence, or pace).

In sum, for the reasons stated above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**, Plaintiff's Motion for Judgment on the Pleadings and alternative motion for remand be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

## VII

### **Recommendation**

For the reasons set forth above, it is respectfully recommended as follows:

(1) The Court **GRANT** Defendant's Motion for Summary Judgment (ECF No. 17);

(2) The Court **DENY** Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10);

(3) The Court **DENY** Plaintiff's alternative motion for remand (ECF No. 10);

(4) The Court **AFFIRM** Defendant's final decision; and

(5) The Court **CLOSE** this case.

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be served and filed within fourteen days under Fed. R. Civ. P. 72(b) and L.R. 301(5)(b).  Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen days after being served with a copy of the report may result in the waiver of any right to a *de novo* review of the determinations contained in the report, and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Date: August 7, 2015                                              _____/s/_____
                                                                                  Thomas M. DiGirolamo
                                                                                  United States Magistrate Judge